**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| **HORACE J. CONDE, JR.**<br>**L.A. DOC#131614** | * | **CIVIL ACTION NO. 09-1441**<br>**SEC. P.** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **LOUISIANA CORRECTION SERVICES, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a motion for summary judgment filed by defendants LCS Corrections, Inc. (erroneously named as "Louisiana Corrections Services"), Nurse Allen, Nurse Sigaret, and Deputy Warden Pailette [doc. # 33]. The motion has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons stated below, it is recommended that the motion be **GRANTED**.

## BACKGROUND

*Pro se* plaintiff Horace J. Conde, Jr., proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on August 10, 2009. [Doc. # 1.] Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); he is incarcerated at the Winn Correction Center (WCC) in Winnfield, Louisiana. However, plaintiff's complaint stems from improper medical care he claims he received while incarcerated at J.B. Evans Correction Center (JBECC) in Newellton, Louisiana. In his complaint, plaintiff prays for an injunction directing the defendants to transfer him to an LDOC medical prison and for an unspecified amount of compensatory damages. [Doc. # 1, ¶ V.]

A review of his medical records reveals plaintiff has complained of numerous chronic ailments throughout his incarceration. *See* Mot. For Summ. J., Ex. 1. However, gauging from the exhibits plaintiff attached with his complaint, it appears he restricts his claims to those involving his left heel and foot, injured in a car accident sometime in 2008. *Id.* at p. 1.

On February 26, 2008, x-ray examinations of plaintiff's cervical and lumbar spine were conducted at the Lafayette General Medical Center. [Doc. # 1, p. 6.] The radiologist's report, with respect to the x-rays of the cervical spine noted "... prominent disc space narrowing at C4-5 and C5-6. There is prominent anterior and posterior osteophytes[1] at C4-5. There is no fracture, subluxation[2], or prevertebral soft tissue abnormality." *Id.* With regard to the x-rays of the lumbar spine, the radiology report noted, "Vertebral body height is well maintained. Disc spaces are normal. There is no evidence of fracture or subluxation. There is minimal spurring at L4." *Id.* Plaintiff was discharged and provided prescriptions for "neurotin," lortab, and flexeril.[3] The dosage amount is not listed, nor is it noted whether refills were provided. [Doc. # 1, p. 7.]

On some unspecified date plaintiff entered into LDOC custody and was incarcerated at

---

[1] An osteophyte is a pathological (caused by disease) bony outgrowth. Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health, Medical Dictionary at http://www.nlm.nih.gov/medlineplus/mplusdictionary.html

[2] A subluxation is a partial dislocation (as of one of the bones in a joint). Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health, Medical Dictionary.

[3] Neurontin® (often spelled "neurotin") or gabapentin is an anticonvulsant ordinarily used to treat and control seizures, but which is sometimes prescribed to relieve chronic pain. Lortab® or hydrocodone is available only in combination with other ingredients, and different combination products are prescribed for different uses. Some hydrocodone products are used to relieve moderate to severe pain. Hydrocodone is in a class of medications called opiate (narcotic) analgesics and in a class of medications called antitussives. Hydrocodone relieves pain by changing the way the brain and nervous system respond to pain. Flexeril® or cyclobenzaprine, is a muscle relaxant, used with rest, physical therapy, and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs & Supplements at http://www.nlm.nih.gov/medlineplus/druginformation.html

the Lafayette Parish Correctional Center (LPCC). On February 16, 2009, he was transferred from LPCC to the Caldwell Detention Center (CDC). (Compl. at ¶ IV.) According to plaintiff, his physician had previously prescribed 600 mg of Neurotin® three times daily; however, upon his arrival at CDC, and without the approval of a physician, the dosage was reduced to once daily. *Id.* Plaintiff alleges that his requests for a medical examination were ignored. *Id.*

On March 2, 2009, plaintiff was transferred to JBECC. *Id.* The LCS Corrections Services, Inc. Medical Transfer Summary provides that plaintiff had "chronic complaints" of "back pain." [Doc. # 33, Ex. 1, p. 7.]

On March 6, 2009, plaintiff filed an offender grievance ("grievance") against "Nurse". [Doc. # 1, p. 8.] Plaintiff complained that he was having swelling and pain in his left foot, but that "the nurse that was on duty...denied my family to mail the special boot...because it's not in medical records from [CDC.]" *Id.* Deputy Warden Pailette, in rejecting plaintiff's request, noted that "no boots [are] allowed in. You can have support tennis shoes sent in." *Id.* Plaintiff filed a separate grievance, also on March 6, 2009, complaining that his requests for JBECC to obtain his medical records (presumably from CDC) had gone ignored. [Doc. # 1, p. 9.] Plaintiff again requested that his family be allowed to mail him his support boots; alternatively, he requested that "J.B. Evans...purchase me a pair of support boots." *Id.* This second grievance was not signed by anyone from JBECC.

On March 10, 2009, plaintiff filed another grievance, requesting that the Deputy Warden "come talk to" plaintiff, and that his mother had no money to purchase him any tennis or support shoes. [Doc. # 1, p. 10.] Petitioner further stated that the boots he had requested are soft leather, contained no steel, and were ankle-high in order to support his foot. *Id.* This grievance was not

signed by anyone from JBECC; however, there is a handwritten note from Deputy Warden Pailette stating "No boots allowed. If it was that serious, you would have had a pair on when you came here. Dr. Scholl's T. Shoes only." [Doc. # 1, p. 11.]

On March 16, 2009, plaintiff filed an offender request ("request"), "requesting for copy of 2nd step that was denied on special boots [*sic*]." [Doc. # 1, p. 12.] Plaintiff wrote that he wanted to proceed with the second step of a formal grievance. *Id.* Plaintiff continued to complain of pain and swelling in his "crushed" heel and ankle. *Id.* Deputy Warden Pailette signed the request, writing: "You have refused medical treatment from the nurses. They have offered you [ibuprofen] you refused–"No" boots are allowed–Dr. Scholl's support tennis shoes you can get (1 pair). If you continue writing after I told you 'no' boots Disciplinary action will be taken. You don't have boots so evidently other facilities wouldn't allow to have any also." *Id.*

On March 28, 2009, plaintiff submitted another grievance, requesting to see a doctor or "be sent back to LPCC" or another facility in order for him to "get the proper medical attention and medication." [Doc. # 1, pp. 14-15.] Plaintiff wrote that, upon arriving at JBECC, he had only been receiving his medication once a day, instead of the three times a day per his prescription. *Id.* Plaintiff further wrote that each time he placed a sick call, the nurse told him he was "putting on." *Id.*

On April 5, 2009, Nurse Sigaret signed a response to plaintiff's grievance, recommending that no action be taken with regard to plaintiff's complaints. [Doc. # 1, p. 16.] It was noted that plaintiff "hasn't displayed any significant symptoms" that would necessitate plaintiff being seen by a medical doctor. *Id.* It was further noted that the officers who supervised plaintiff had not observed any problems plaintiff had with mobility or walking. *Id.* Finally, Nurse Sigaret noted

that the "transferring facility consulted with MD (also our MD) about situation and no change was made to medication." *Id.*

On June 12, 2009, plaintiff was seen by a doctor who prescribed Neurotin® three times daily.[4] The doctor also noted that the plaintiff should have a special boot for his left foot in order to "support [his] injured heel." [Doc. # 33, Ex. 1, p. 11.] On June 22, 2009, the doctor's orders were amended; the plaintiff was again prescribed Neurotin®,[5] but it is noted that the plaintiff was only allowed to wear Dr. Scholl's for his injured foot. *Id.* Nurse's notes from the same day indicate that Nurse Sigaret spoke with "the MD" in the morning regarding the June 12 orders. Nurse Sigaret wrote that the "MD was misinformed and was lead to believe that the offender was on Neurotin 600 mg [three times daily] per info from inmate. There is no documentation that inmate was ever on Neurotin from facility prior to arriving at [unintelligible] LCS Caldwell..." *Id.* at p. 18. Nurse Sigaret also noted that the "only shoes allowed are medical shoes and Dr. Scholl's...inmate advised, doesn't want Dr. Scholl's shoes. Inmate observed several days by...nurses and officers going about daily activities without difficulties noted. Will continue to monitor periodically...changes noted...will advise MD for reevaluate as needed." *Id.*

Plaintiff's complaint was filed August 10, 2009. On or about December 1, 2009, plaintiff was transferred to Forcht Wade Correctional Center (FWCC), in Keithville, Louisiana. [Doc. # 9.] Thereafter, on or about January 7, 2010, plaintiff was transferred to WCC.

---

[4] The Doctor's Notes state "Neurotin 600 mg P.O. tid." "P.O." is medical jargon for "by mouth," while "tid" means "three times a day." Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs & Supplements at http://www.nlm.nih.gov/medlineplus/druginformation.html

[5] The June 22, 2009 notes indicate plaintiff was to receive "Neurotin 600 mg PO ā hs," or 600 mg, by mouth, before bedtime. Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs & Supplements at http://www.nlm.nih.gov/medlineplus/druginformation.html

Defendants filed an answer to the complaint on January 13, 2010. [Doc. # 17.] In the underlying motion, defendants assert that there is no genuine issue of a material fact, and that defendants are entitled to judgment as a matter of law.[6] [Doc. # 33.]

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Summary judgment is appropriate when the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. F.R.C.P. Rule 56(b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While the facts are to be reviewed with all inferences drawn in favor of the non-moving party, factual controversies are resolved in favor of the non-movant only when there is an actual controversy. That is, when both parties have submitted evidence of contradictory facts. *McCallum Highlands, Limited v. Washington Capital DUS, Inc.*, 66 F.3d 89 (5th Cir. 1995). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element fo the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

---

[6] In their answer, defendants asserted, as an affirmative defense, that plaintiff failed "to follow the administrative procedures necessary in order to prosecute his claim, including without limitation any required grievance procedures." Answer [doc. # 17], Seventh Defense. However, any failure on behalf of plaintiff to exhaust his administrative remedies is not the basis of this motion and will not be considered.

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Ultimately, however, the court must resolve all doubts against the moving party and draw any reasonable inferences raised by the evidence in favor of the non-moving party. *See Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 1999).

**II. Claims for Injunctive Relief**

Plaintiff seeks injunctive relief under 28 U.S.C. § 1983. However, in order for plaintiff to be awarded injunctive relief, there must be “a real or immediate threat that [plaintiff] will be wronged again.” *See Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997). The Fifth Circuit has repeatedly stated that a prisoner-plaintiff's transfer from a facility at which the alleged wrongs occurred renders his claim for injunctive relief moot. *See, e.g., Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *Cooper v. Sheriff, Lubbock County*, 929 F.2d 1078,

1084 (5th Cir. 1991).

In this case, it is undisputed that, after filing his petition, plaintiff was transferred from JBECC to Forcht-Wade Correctional Center in Keithville, Louisiana, and then to Winn Correctional Center, where he currently resides. Plaintiff's claims contain allegations only against the officials at JBECC. Therefore, it is recommended that plaintiff's claim for injunctive relief be **DISMISSED as MOOT.**

**III. Plaintiff's § 1983 Claims**

Plaintiff brings his claims under 42 U.S.C. Section 1983. Plaintiff has sued individually: Nurse Allen, Nurse Sigaret, and Deputy Warden Shirley Pailette. Plaintiff alleges defendants deprived him of his medication and the special boots he was ordered to wear by a doctor. [Doc. # 1, ¶ IV.]

To succeed on his claims of inadequate medical care brought under Section 1983, an inmate must demonstrate that there has been a violation of Eighth Amendment rights through "deliberate indifference to serious medical needs" by prison officials or other state actors. *Estelle v. Gamble*, 429 U.S. 97, 105-107 (1976). Such a showing of "deliberate indifference" is difficult to meet, as plaintiff must prove (1) the official in question was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2001)..

To the extent that plaintiff is alleging that defendants delayed in providing him with medical care, the Fifth Circuit has stated that the prisoner established an Eighth Amendment

violation only if he demonstrates: (1) that the officials acted with deliberate indifference; and (2) that their deliberate indifference caused him substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

**a) Deliberate Indifference**

In the case *sub judice*, plaintiff has failed to introduce any evidence to establish that the defendants were aware of a serious risk of harm to the plaintiff, or that they subjectively intended any harm to occur. On the contrary, the various medical requests plaintiff submitted were always responded to in a timely manner, as evidenced by the exhibits submitted by both parties, as well as the Affidavit of Shirley Pailette, *see* Doc. # 33, Ex. 2.[7] Plaintiff's complaints of pain in his foot and heel, stemming from a pre-existing injury, would not lead a reasonable person to believe that plaintiff was at risk of additional harm to his foot and heel. To be sure, persons who have suffered broken bones often have pain in the affected area long after the break has healed.

Rather than exhibiting any indifference to plaintiff's physical complaints, defendants eventually allowed plaintiff to have his requested "support boots." By his own admission, plaintiff was able to wear his "prescribed orthopedic shoes" after being "without them for four and a half months." *Id.* at p. 4. According to defendants, even after being supplied with boots, plaintiff "continued to wear his tennis shoes in the recreation yard when he should have been wearing his boots, if they were crucial to his health." (Aff. of Shirley Pailette [doc. # 33, Ex. 2], ¶¶ 6, 10.) The evidence also shows that plaintiff received Neurotin® on March 5, 2009; March 27, 2009; April 30, 2009; May 27, 2009; June 30, 2009; July 27, 2009; August 26, 2009;

---

[7] The Affidavit provides that, on March 4, 2009, plaintiff was "offered Tylenol or Ibuprofen, which were refused...he refused to tighten the laces (of his shoes) to provide support." [Doc. # 33, Ex. 2, ¶ 3.] On March 19, 2009, plaintiff was given Ibuprofen for swelling on the right side of his head. *Id.* at ¶ 4.

September 22, 2009; October 1, 2009; October 14, 2009; October 28, 2009; and October 30, 2009. *Id.* at ¶ 7; *see also* doc. # 33, Ex. 1, pp. 20, 22. There is no evidence that the defendants acted with deliberate indifference to plaintiff; further, the evidence submitted shows that plaintiff began receiving his medication and was allowed to wear his support boot well before he was transferred from JBECC.

In his opposition, plaintiff argues that the defendants "caused the needless pain and suffering and compounding of injury to plaintiff" and were "negligent in failing to fulfill their responsibilities and duties as required by contract and law." [Doc. # 36, p. 6.] To the extent that plaintiff is claiming that defendants acted negligently, such an argument does not withstand scrutiny under Section 1983, as negligent medical care does not constitute a valid 1983 claim. *Mendoza*, 989 F.2d at 195.

**b) Substantial Harm**

In his opposition, plaintiff fails to introduce evidence showing how, precisely, he was harmed at all. Plaintiff refers to his "injury," but does not specify any injury he suffered as a result of defendants' actions. *See* Doc. # 36, p. 4. Plaintiff has not alleged any physical injury he suffered as a result of being denied his "prescribed boot," or as a result of not being administered Neurotin® three times daily, as he alleges he should have been. His complaint, signed August 7, 2009, demands that he be "paid for the unnecessary pain and suffering that [he has] been going through from February 16, 2009 up until now and so fort [*sic*]." [Doc. # 1, ¶ 5.] However, plaintiff does not state with specificity how his pre-existing injuries were exacerbated as a result of defendants' actions; nor does he provide any affidavit or other sworn testimony stating how defendants injured him. The fact that plaintiff apparently does not believe that his medical

treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not entitled to the "best medical care money can buy." *See Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). The test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. *Woodall, supra*.

Although factual controversies are to be resolved "in favor of the nonmoving party," an actual controversy does not exist unless "both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Indeed, in response to a properly supported motion for summary judgment, **the non-movant may not rest upon the mere allegations or denials contained in his pleadings**, but instead must set forth, by affidavit or otherwise, the specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In other words, once the moving party points to an absence of evidence in the nonmoving party's case, the non-movant must come forward with summary judgment evidence sufficient, such that if introduced at trial, it would suffice to prevent a directed verdict against the non-movant. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

Here, plaintiff has submitted no such evidence. Rather, defendants' own evidence fails to support even a claim of negligence against them, much less deliberate indifference. Without offering any evidence in support of his allegations, there can be no genuine issue as to the material facts alleged. *Celotex Corp.*, 477 U.S. at 322-23. Plaintiff has therefore "failed to make a showing sufficient to establish the existence" of elements essential to his case, *i.e.*, that the defendants "knowingly and intentionally" withheld adequate medical care; and that such care caused any injury to plaintiff. *Id.*

If, after the movant party's initial showing, the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). **It is therefore recommended that the Defendants' motion be GRANTED, and that plaintiff's civil rights claims against all defendants be dismissed with prejudice.**

**CONCLUSION**

For the above-assigned reasons,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 33] filed by defendants LCS Corrections Services, Inc., Nurse Allen, Nurse Sigaret and Deputy Warden Pailette be **GRANTED**, and that plaintiff's claims against said defendants be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 27th day of September, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE